Good morning. Our first case this morning is Winkelman v. Saul. Mr. Vrena and Mr. Mervis, can you hear me? Yes, we can, Your Honor. Yes, we can. Great. You may proceed, Mr. Vrena. Thank you, Your Honor. May it please the Court. This is a Social Security case, and in a Social Security case, the evaluation must build, must make a logical connection between the evidence and the ALJ's conclusion. In this case, the ALJ, after the hearing, sent some interrogatories to a doctor of her choosing that Dr. Patrick McKinnon wrote, gave many opinions about what she thought Mr. Winkelman was able to do and was not able to do. One of those, and the one that's at issue in this case, is she said that Mr. Winkelman was limited to no more than occasional reaching in all directions with his left upper extremity. In the ALJ's opinion, she acknowledged that, but she didn't evaluate it. Both parties have pointed to a couple of spots in the ALJ's decision, but in neither one of those places did the ALJ actually evaluate that opinion. One of them, and this is on page 17 of the appendix, page 24 of the record, and the ALJ listed all of the doctor's opinions, then wrote, the undersigned gives this opinion, great weight, to the extent that it is consistent with the residual functional capacity for the reasons set forth above. So she's basically saying, I agree with this. I agree with Dr. Patrick McKinnon's opinions to the extent that I agree with them, which is not helpful. And then she says, for the reasons stated above. So she was not specific about those reasons. And as the district court noted, the ALJ did not reiterate in that part of the order what those reasons were. So again, there was no analysis, there was no evaluation, there was no logical connection there, and were left unable to trace the path of her reasoning. The other place in the decision was on the next page, page 18 of the appendix, page 25 of the record, where the ALJ wrote, the only manipulative limitations that are warranted related to his left shoulder as it relates to overhead reaching, which he admits he is able to do. Therefore, the undersigned limits him to occasional overhead reaching. Mr. Franny, this is Judge Wood. I just wanted to ask you what we are to make of other statements in the ALJ's opinion that do support what she thought Mr. Winkleman's capacity was. So, for example, she notes that he testifies that he doesn't have trouble reaching in front with his left arm. And I suppose it's always possible to write a better opinion and repeat things under all the different headings. But this is sort of at the middle of appendix 13, which looks like it's page 8 of 15 of the opinion. They're all different numbering things, but he has no difficulty using his hands or fingers and can reach with both arms. So it's not like the ALJ never touched on this. What are we to make of all of that? Well, with that, and one is that the fact that he can reach out in front of him one time really tells you nothing about how frequently or rarely he can reach out in front over the course of a day. So that's one thing. And then the other thing is... Well, do we have a hint from his testimony? This is a giant paragraph summarizing his testimony, as I read it anyway. And he doesn't say only every so often. He does limit some things. He talks about how often he walks in a day and he walks two miles and he sometimes uses a push motor. There are things he limits, but our review was limited, of course, as you know, substantial evidence. And I just don't understand why, if the ALJ signifies her awareness that he can reach with both arms over here, why we should be so worried later that she doesn't talk about that further. Well, and I guess another thing is, well, first of all, in the hearing, nobody asked him about how often he could reach. The ALJ simply said, can you reach out in front of you? And he said, yes. Another thing is she asked him, can you reach overhead with your left upper extremity? And he said, yes. And so then she subsequently limited him because of that to no more than occasional reaching overhead. So I don't know that that's necessarily logical, but if she's going to say, because he can do this, I am therefore limiting him to no more than occasional, then she should have done that with the reaching out in front as well. Okay. And then moving to the other reason, which is, I guess, what I just talked about, you know, she says, I am assigning him overhead reaching with the left upper extremity. I am doing that because he says he can reach overhead. So therefore, I'm limiting him to reaching overhead no more than occasionally. So, you know, if that's true of reaching overhead. Then logically, it should be true with reaching out in front. I don't doubt that he can reach in all directions, but the issue is. Dr. Patrick McKinnon said he can reach in all directions, no more than occasionally. And where is the reasoning that says from the ALJ that says. Okay, I'm going to limit him to reaching in all directions, and I'm going to do it. Not at all. I'm going to do it occasionally. I'm going to do it frequently. It's simply not in there. The error is material because the jobs used to deny the claim and the other jobs mentioned by the VE vocational expert at the hearing all require frequent reaching in all directions. The Commissioner contends that the ALJ did not err, but does not contest that if the ALJ did err, the error is material. I see my time is up. Thank you very much. Thank you, Mr. Mervis. Good morning, and may it please the Court. David Mervis on behalf of the Commissioner. This Court is asked to decide a very, very narrow issue on appeal, and that's whether the ALJ's analysis of one aspect of one opinion in the record is supported and sufficiently explained. Mr. Winkleman hasn't challenged any other element of this lengthy administrative record. There are numerous other opinions, numerous other impairments. And I think the reason that I note that just at the outset is because what Mr. Winkleman has done here in this appeal is essentially shine a spotlight on this one small aspect. One aspect. I shouldn't characterize it that way. One aspect of the ALJ's opinion. What that does, of course, is when there's a spotlight shown on the one aspect of the appeal, every word is scrutinized, and Mr. Winkleman asks for, I think, more than can reasonably be expected. What this Court has repeatedly said is that a reviewing court, including this one, is to give the ALJ's decision a commonsensical reading rather than nitpicking at it. And so what Judge Wood, what you noted, is directly on point. The ALJ in this case does address the issue of reaching and does address the issue of reaching out in front, which is the element of Dr. Patrick McKinnon's opinion that is at issue here. I was going to ask you whether your best evidence is this spot in the ALJ's opinion where the ALJ is recounting the testimony. I'm not sure whether a description of the testimony is the same thing as a holding that every aspect of his account of what he can do is something the ALJ has accepted. Sometimes they accept part, but not all. So where do we see an actual finding of fact on the part of the ALJ that this reaching capability is there? Absolutely, Your Honor. I think that is one piece, but I would point to several other findings or pieces of the ALJ's analysis, and they all are relevant to the question of reaching. So what the ALJ has noted is that an orthopedist found that Mr. Winkleman demonstrated normal range of motion and strength. This is Appendix 14. This is when the ALJ discusses it. The record is at 702 of the record. This is Dr. Mango. There's another orthopedist, Dr. McNally, in July of 2015 that indicates that Mr. Winkleman has full range of motion. That's at Appendix 15 is when the ALJ discusses it, and it's a record that appears at 1128. Dr. Gupta is a consultative examiner who notes normal range of motion and strength in July of 2014. Again, Appendix 15 is when the ALJ discusses it. The record is 1049, 1051 in the record. So those are specific findings that the ALJ, or those are specific pieces of evidence that the ALJ notes. Counsel, Winkleman admitted that he was able to reach overhead, didn't he? That's right, Your Honor. And that goes to this whole issue that you're discussing now. So he absolutely, he indicated at the hearing, Your Honor, that he can reach overhead with his left arm. But he says, he says something, the ALJ says something weird, though, in the opinion here. Right about the same area, this is at Appendix 13, he says he is able to lift his shoulder over his head. And I kept trying to imagine what that would look like. What are we supposed to make of that? I'm not certain that, I think that probably was an example of poor drafting. Maybe his arm above his shoulder, or you can imagine shoulder towards the head. I certainly grant you that it's not a perfect phrase. Hardly, and since it's pertinent to what we're trying to figure out, that's actually, I'm not just being picky about this. I'm trying to figure out, you know, he suffers from left shoulder pain because he hasn't had the surgery. This is all the rotator cuff problem, I assume. And then he's able to lift his shoulder over his head. I don't know what that means, his arm. It's a strange thing. I would point, Your Honor, to the testimony at Record 88. So he indicates that he's able to reach overhead, but he indicates that there's some popping, cracking. And so I think the ALJ, quite reasonably, is indicating that there are some difficulties. Now, of course, we've got Dr. Patrick McKinnon, who indicates that there is a difficulty with reaching with this left arm overhead. And the ALJ gives weight to that. And so the overhead aspect of it is reaching in total is certainly at issue here. But the ALJ made a finding that was consistent with Dr. Patrick McKinnon's opinion here on overhead reaching. And so the question that Mr. Winkleman is asking this court to examine more closely is this reaching out in front. And so I think, but Your Honor makes the point that the ALJ is discussing this issue. I think that's not the only place either. I mean, this is from the transcript and from the hearing. I think it's useful to look at what the ALJ did with several other opinions that are in the record. So Mr. Winkleman's primary care physician, this is Dr. Troyer, issues opinions. These are, I think, a record 1053 and 1116. They did not include reaching limitations. The ALJ says because of Mr. Winkleman's difficulty with his left shoulder, I'm going to add manipulative limitations to the residual functional capacity. The ALJ, she, excuse me, does the same thing with Dr. Leong, and that's record 1249. Appendix 17 is when the ALJ discusses it and says, again, this doctor, this consultative examiner, excuse me, not an examiner, a non-examining consultant, says nothing about reaching limitations. But in light of this record, Dr. Patrick McKinnon and the testimony here that there are some discomfort when Mr. Winkleman tries to reach overhead, I'm going to add limitations with respect to that function. So, again, the ALJ is surely focused on this issue. And when the district court in this case indicates that, sure, it may be best practice for the ALJ to have repeated, to reiterate everything that had come before it in this section of the decision. But, again, the reason I highlighted at the beginning that we're taking sort of a spotlight approach here is that the ALJ had a lengthy, extremely lengthy record to review, lots of opinions, lots of impairments. Okay. You'll have to repeat what you just said, Mr. Mervis, because things froze up for some of us.  I'm not sure when I froze. But what I was getting at was that the ALJ had a responsibility to consider an extremely lengthy record, over 1,000 pages of medical evidence. And so in the course of discussing lots of impairments, there are numerous impairments. We're talking about this rotator cuff issue. But there are numerous impairments. There are numerous opinions, numerous treatment notes. And so the ALJ is tasked with going through all of them. So, Mr. Mervis, just to clarify, do you agree with Mr. Vrana that if there were a problem with reaching other directions, these representative jobs would need to be reconsidered? They do, yes, Your Honor. They do require frequent reaching. So if Mr. Winkleman is unable to reach frequently in front of him, then these jobs wouldn't appear to be appropriate. That, of course, it is possible that the vocational expert could provide some explanation, but that isn't in this record. Thank you. So, again, what I want to just leave this court with is the understanding that this ALJ reviews numerous records, comes up with a lengthy or sufficiently clear explanation of how she treats this one impairment, in addition to the other impairments that the ALJ is tasked with reviewing and considering. And there's just simply no question that the ALJ is focused or is partly focused, has amongst the ALJ's focuses, is on this reaching function. The ALJ says it when she talks about these other opinions, Dr. Troyer, Dr. Leong, and she indicates when she talks about Dr. Patrick McKinnon herself. So because the ALJ's decision must be read in a commonsensical way, we would request that this court affirm the ALJ's decision. Thank you. Thank you very much. Mr. Greiner. Thank you, Your Honor. Just a few things I would note, and I may have said it earlier, that the district court was impressed with the ALJ's reference to range of motion. But range of motion, being able to do something, I think, as I've said one time, doesn't mean you can do it over and over. For Social Security, according to their ruling, 83-10, frequency means being able to do something between one third of the day and two thirds of the day. Here you have a gentleman with a full thickness tear in his rotator cuff. It's never been repaired because he spent all his money on these other problems that he's had. The ALJ found that a severe limitation or severe impairment provided a limitation, but she simply didn't evaluate Dr. Patrick McKinnon's opinion that Mr. Winkleman is limited to no more than occasional reaching in all directions with his left arm. Yes, it's one part, but it's a very important part, as Judge Woods' question notes. And yes, she has a tough job, but it's an important job, and how she does her job affects Mr. Winkleman very much. So it's important that she do her important job correctly, and I would ask that you reverse the ALJ's decision and remand Mr. Winkleman's case for another hearing and another decision. Thank you very much. All right, thank you. Thanks to both counsel, the case is taken under advisement.